IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION AT CLEVELAND

| | |
|---|---|
| **AUSTIN SAMHRIC**<br>1415 Homestead Creek Dr.<br>Broadview Hts., OH 44147<br><br>Plaintiff,<br><br>v.<br><br>**RENT RECOVERY SOLUTIONS, LLC**<br>℅ Collete Peta, Registered Agent<br>1945 The Exchange SE, Suite 120<br>Atlanta, GA 30339<br><br>AND<br><br>**JSDI PAVEY SQUARE, LLC**<br>℅ Taft Service Solutions Corp., Reg. Agent<br>425 Walnut St., Suite 1800<br>Cincinnati, OH 45202<br><br>Defendant. | Case No.<br><br>Judge<br><br>**COMPLAINT FOR DAMAGES**<br><br>**JURY DEMAND ENDORSED HEREON** |

Plaintiff Austin Samhric ("Plainitff" or "Samhric") and for his Complaint for Damages against Defendants Rent Recovery Solutions, LLC ("RRS") and JSDI Pavey Square, LLC ("Pavey", together with RRS, the "Defendants") states as follows:

INTRODUCTION

1. The United States Congress has found the banking system is dependent upon fair and accurate credit reporting. Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence, which is essential to the continued functioning of the banking system. Congress enacted the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.* ("FCRA"), to ensure fair and accurate reporting, promote efficiency in the banking system, and protect consumer privacy. The FCRA seeks to

ensure consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy because consumer reporting agencies have assumed such a vital role in assembling and evaluating consumer credit and other information on consumers. The FCRA also imposes duties on the sources that provide credit information to credit reporting agencies, called "furnishers."

    2.    The FCRA protects consumers through a tightly wound set of procedural protections from the material risk of harms that otherwise flow from inaccurate reporting. Thus, through the FCRA, Congress struck a balance between the credit industry's desire to base credit decisions on accurate information, and consumers' substantive right to protection from damage to reputation, shame, mortification, and the emotional distress that naturally follows from inaccurate reporting of a consumer's fidelity to his or her financial obligations.

    3.    Under the FCRA, whenever a consumer reporting agency prepares a consumer report, it shall follow reasonable procedures to assure *maximum possible accuracy* of the information concerning the individual about whom the report relates. 15 U.S.C. § 1681e(b) (emphasis added).

    4.    Under the FCRA, if a consumer disputes the completeness or accuracy of any item of information contained in a consumer's file, and the consumer notifies the agency directly of such dispute, the agency shall reinvestigate—free of charge—and report the current status of the disputed information, or delete the item from before the end of the 30-day period beginning on the date on which the agency receives notice of the consumer's dispute. 15 U.S.C. § 1681i(a).

    5.    Under the FCRA, when a consumer reporting agency conducts any reinvestigation with respect to disputed information in the file of any consumer, the consumer reporting agency shall review and consider all relevant information submitted by the consumer.

15 U.S.C. § 1681i(a)(4).

6. Under the FCRA, if, after any reinvestigation of any information disputed by a consumer, an item of information is found to be inaccurate, incomplete, or cannot be verified, the consumer reporting agency shall promptly delete that item of information from the consumer's file or modify that item of information, as appropriate, based on the results of the reinvestigation. 15 U.S.C. § 1681i(a)(5).

7. Under the FCRA, after a furnisher of information receives notification pursuant to Section 1681i(a)(2) of a dispute with regard to the completeness or accuracy of any information provided by a person to a consumer reporting agency, the furnisher shall: (A) conduct an investigation with respect to the disputed information; (B) review all relevant information provided by the consumer reporting agency pursuant to Section 1681i(a)(2) of this title; (C) report the results of the investigation to the consumer reporting agency; and (D) if the investigation finds that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies to which the person furnished the information and that compile and maintain files on consumers on a nationwide basis. 15 U.S.C. § 1681s-2(b).

8. Under the FCRA, any person who willfully fails to comply with any requirement imposed under this subchapter with respect to any consumer is liable to that consumer: in an amount equal to the sum of any actual damages sustained by the consumer as a result of the failure; for statutory damages of not less than $100 and not more than $1,000; for such amount of punitive damages as the court may allow; and for the costs of the action together with reasonable attorneys' fees. 15 U.S.C. § 1681n.

9. Under the FCRA, any person who is negligent in failing to comply with any requirement imposed with respect to any consumer is liable to that consumer in an amount equal

to the sum of any actual damages sustained by the consumer as a result of the failure and the costs of the action together with reasonable attorneys' fees.  15 U.S.C. § 1681o.

## PARTIES, JURISDICTION, AND VENUE

10. Plaintiff Austin Samhric is a natural person residing in Broadview Heights, Ohio.

11. Plaintiff is a "consumer" as that term is defined by 15 U.S.C. § 1681a(c).

12. Plaintiff is a "consumer" as that term is defined by the Fair Debt Collection Practices Act.

13. Plaintiff is a "consumer" as that term is defined by O.R.C. § 1345.01(D).

14. Defendant Rent Recovery Solutions, LLC is a foreign limited liability company headquartered in Atlanta, Georgia.  RRS is not registered to do business with the Ohio Secretary of State.

15. RRS is a debt collector as that term is defined by the FDCPA as demonstrated by the allegations in this Complaint at all times pertinent to this Complaint since December 22, 2022, RRS was collecting on a debt on behalf of Pavey.

16. RRS is a "person" who furnishes information to credit reporting agencies such as Equifax, Experian and Trans Union as provided in the FCRA and as defined by 15 U.S.C. § 1681s-2.

17. RRS is also a "supplier" as that term is defined by O.R.C. § 1345.01(C).

18. JSDI Pavey Square, LLC is a domestic limited liability corporation incorporated under the laws of the State of Ohio.  Pavey is the owner of The View at Pavey Square which provides off-campus student housing in Columbus, Ohio.[1]  Pavey is a "supplier" as that term is defined by O.R.C. § 1345.01(C).

---

[1] https://theviewonpaveysquare.com/ (last visited Dec. 31, 2024).

19.     All of Samhric's interactions with Pavey were with representatives of the View at Pavey Square and/or RRS who was collecting a debt owed on behalf of Pavey.

20.     This court has jurisdiction over this matter pursuant to 15 U.S.C. §§ 1681, *et seq.*, 15 U.S.C. §§ 1692k(d) and 28 U.S.C. §§ 1331, as well as pursuant to 28 U.S.C. § 1367 for state law claims.

21.     Venue is proper in the Northern District of Ohio pursuant to 28 U.S.C. § 1391 as the majority, if not all, of the incidents, events, or omissions complained of and giving rise to the instant claim or controversy occurred within this district.

## FACTUAL BACKGROUND

22.     Samhric incorporates the allegations contained in Paragraphs 1 through 21 as if fully restated herein.

23.     On April 21, 2021 Samhric and Pavey entered into a residential lease for the apartment located at 10 W. Northwood Avenue - 305, BR 4, Columbus, OH 43201. (the "Lease")

24.     The duration of the Lease was from August 19, 2021 until July 31, 2022.

25.     Pursuant to the terms of the Lease, Samhric was to tender 10 payments of $1,050.00 to Pavey and Pavey was to cover the rent due for June 2022 and July 2022.

26.     Samhric made all required payments owed to Pavey as required by the Lease.

27.     By May 31, 2022 Samhric had provided Pavey notice of his intent not to renew his lease and his intent to relocate by May 31, 2022 which representatives from Pavey acknowledged and agreed to allow him to terminate the lease as of his last payment.

28.     Despite the agreement between Samhric and Pavey on June 2, 2022 Pavey emailed Samhric a "Notice to Vacate" demanding he remit $2,559.54.

29. Shortly after receiving this email on June 2, 2022 Samhric exchanged emails with Malaysia Ford ("Ford"), the Property Manager at the View at Pavey Square, regarding rescission of this Notice given the prior agreement. These email exchanges included an email from Ford on June 2, 2022 at 3:25:32 pm to Samhric advising Samhric to "Please disregard the notice".

30. Despite the June 2, 2022 emails, Ford and Samhric exchanged emails on June 13, 2022 in which Ford, on behalf of Pavey, again took the position Samhric was responsible for the rent due for June 2022 and July 2022 despite the explicit terms of the Lease.

31. These June 13, 2022 email exchanges included Ford's email at 1:44:21 pm to Samhric advising him that "I am in contact with our legal team, and they will be in contact with you soon."

32. Samhric never heard from Pavey's legal team, instead on December 22, 2022 Pavey engaged RRS to collect on liabilities purportedly owed by Samhric to Pavey of $3,386.00.

33. In early September 2023 RRS began furnishing derogatory information on Samhric's Equifax Credit File which included a new collections tradeline for RRS indicating an amount of $3,386.00 owed.

34. Samhric was not aware that RRS had began furnishing derogatory information and on September 18, 2023 was denied a Direct PLUS Loan due to the derogatory information on his Equifax Credit Report. *See* **Exhibit 1** - Direct Loan Submission.

35. Shortly after receiving Exhibit 1, Samhric reviewed his Equifax Credit File and sent a detailed dispute to Equifax specifically disputing the RRS tradeline and providing information to Equifax of all payments made on the Lease.

36. On October 21, 2023 Equifax responded to Samhric's credit dispute and notified him that RRS had verified the balances owed. *See* **Exhibit 2**.

6

37. As demonstrated by Exhibit 2, RRS furnished additional information to Equifax updating the entire tradeline. *See* Exhibit 2 at p. 2.

38. On January 11, 2024 Samhric sent a debt validation letter to RRS, a true and accurate copy of which is attached as **Exhibit 3**.

39. On January 12, 2024 Samhric received a "settlement offer" from RRS, a true and accurate copy of which is attached as **Exhibit 4**. Exhibit 4 did not provide any of the information to validate the debt that Samhric requested in Exhibit 3.

40. As of the filing of this Complaint, Samhric has not received any substantive response to Exhibit 3.

41. On March 30, 2024 Samhric reviewed his Equifax Credit File which showed that despite Exhibit 2 and Exhibit 3 that RRS was continuing to furnish as of March 29, 2024 the collections information on his Equifax Credit File. *See* **Exhibit 5** at p. 2.

42. On April 1, 2024 Samhric reviewed his Experian Credit File which showed that despite Exhibit 2 and Exhibit 3 that RRS despite Exhibit 2 and Exhibit 3 that RRS was continuing to furnish as of March 29, 2024 the collections information on his Experian Credit File. *See* **Exhibit 5** at p. 5.

43. On April 1, 2024 Samhric reviewed his Trans Union Credit File which showed that despite Exhibit 2 and Exhibit 3 that RRS despite Exhibit 2 and Exhibit 3 that RRS was continuing to furnish as of March 29, 2024 the collections information on his Trans Union Credit File. *See* **Exhibit 5** at p. 7.

44. After reviewing the reporting information on Exhibit 5 on or about May 23, 2024 Samhric sent a written Notice of Dispute to Equifax, Experian, and Trans Union disputing the RRS's March 29, 2024 furnishing of information on each respective credit report.

45. After receiving the May 23, 2024 Dispute Letters, each of the Credit Reporting Agencies notified Samhric that RRS's derogatory information was no longer being furnished on their reports.

46. While RRS had taken steps to address the improper collection attempts by this time, the damage had already been done as the Defendants' actions to collect had already caused Samhric to suffer actual damages including, but not limited to, the denial of the Direct Plus Loan in September 2023 and Samhric's incursion of the certified mailing costs of $5.50 each or $16.50 for the May 23, 2024 credit disputes.

47. In addition to the damages above, the Plaintiff was also forced to incur additional actual damages in having to hire an attorney to prosecute this case and the continued emotional distress in the form of anxiety, anger, and confusion as to why the Defendants even began collecting on this debt that Samhric did not owe under the Lease.

## COUNT ONE:
## VIOLATIONS OF THE FAIR CREDIT REPORTING ACT - RRS
## 15 U.S.C. § 1681, *et seq.*

48. Samhric restates and incorporates all of the allegations contained in Paragraphs 1 through 47 in their entirety, as if fully rewritten herein.

49. Samhric is a "consumer" as that term is defined by 15 U.S.C. § 1681a(c).

50. RRS is a "person" who furnishes information to credit reporting agencies such as Equifax, Experian and Trans Union as provided in the FCRA and as defined by 15 U.S.C. § 1681s-2.

51. Based on the allegations above and Exhibit 2, Samhric sent a Notice of Dispute to Equifax which complied with 15 U.S.C. § 1681i(a)(2) in early September 2023 which detailed Samhric's specific dispute of the amounts owed and Equifax sent to RRS.

52. Based on the allegations above and Exhibit 2 RRS received Exhibit 2 and between September 22, 2023 and October 21, 2023 had furnished the same inaccurate information on Samhric's Equifax Credit File. *See* Exhibit 2 at p. 2.

53. Based on the allegations above and Exhibits 2, 3 and 5, RRS continued to furnish the same inaccurate information on March 29, 2024 to Equifax, Experian and Trans Union. *See, e.g. generally* Exhibit 2 and 3; *see also* Exhibit 5 at pp. 2, 5, and 7.

54. As a direct result of RRS's inaccurate reporting on March 29, 2024 Samhric was forced to send the May 23, 2024 Credit Dispute Notices to Equifax, Experian and Trans Union who noted in response to the May 23, 2024 Credit Dispute Notices that RRS's collection tradeline had stopped.

55. RRS is subject to, and each violated the provisions of 15 U.S.C. § 16811s-2(b), by willfully and/or negligently publishing or furnishing inaccurate trade-line information within Plaintiff's credit reports, failing to fully and properly re-investigate Plaintiff's disputes, failing to review all relevant information regarding the same, and failing to request that Equifax, Trans Union, and Experian correct the Tradeline Accounts on Plaintiff's credit reports and credit file after re-investigating Plaintiff's repeated disputes.

56. RRS's continued incomplete and inaccurate reporting as demonstrated above, in light of its knowledge of the actual errors and omissions was willful. Plaintiff Austin Samhric is entitled to both statutory and punitive damages.

57. The foregoing acts and omissions by RRS constitute willful, reckless or negligent violations of the FCRA, including but not limited to each and every one of the above-cited provisions of the FCRA, 15 U.S.C. §1681.

58. As a result of each and every willful violation of the FCRA, Plaintiff Austin Samhric is entitled to actual damages as the Court may allow pursuant to 15 U.S.C. § 1681n(a)(1) of at least $16.50 as well as costs, statutory damages pursuant to 15 U.S.C. § 1681n(a)(1); punitive damages as the Court may allow pursuant to 15 U.S.C. § 1681n(a)(2); and reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1681n(a)(3) from Equifax.

59. As a result of each and every negligent act of noncompliance of the FCRA, Plaintiff Austin Samhric is entitled to actual damages as the Court may allow pursuant to 15 U.S.C. § 1681n(a)(1) of at least $5.58 and reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1681o(a)(2) from Equifax.

**COUNT TWO:**
**VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT - RRS**
**15 U.S.C. § 1681, *et seq.***

60. Samhric restates and incorporates all of the allegations contained in Paragraphs 1 through 59 in their entirety, as if fully rewritten herein.

61. Samhric is a "consumer" as that term is defined by the Fair Debt Collection Practices Act.

62. RRS is a debt collector as that term is defined by the FDCPA as demonstrated by the allegations in this Complaint at all times pertinent to this Complaint since December 22, 2022, RRS was collecting on a debt on behalf of Pavey.

63. The debt purportedly owed by Samhric to Pavey that was the subject of RRS's collection action is a "debt", as defined by 15 U.S.C. § 1692(a)(5), as the Lease was each incurred for personal, household, or family use.

64. Based on the allegations herein, *supra*, and Exhibits 2 through 5, RRS's actions in attempting to collect the debt against Samhric after receiving the underlying Credit Dispute from

Equifax in September 2023 which have included (1) sending Exhibit 4 to Samhric and (2) sending other dunning notices since constitute violations of the FDCPA, including but not limited to violations of the following sections:

> A. 15 U.S.C. § 1692(d)—Engaging in any conduct the natural consequence of which is to harass, oppress, or abuse any person; and
>
> B. 15 U.S.C. § 1692(f)—Engaging in any unfair or unconscionable means to collect or attempt to collect the alleged debt

65. As a consequence of RRS's conduct, Samhric has suffered from actual damages including, but not limited to, (1) the incursion of actual expenses related to postage to send the May 23, 2024 credit disputes, (2) the loss of time in having to review his Credit Files, and (3) having to engage counsel to prosecute this action.

66. As a consequence of RRS's conduct, Samhric has also suffered actual non-economic damages in the form of emotional distress primarily in the forms of stress, anxiety, and frustration.

67. Based on the allegations above, *supra*, Samhric was harmed by and through the violations of the FDCPA committed by RRS and is entitled to an award of statutory damages, actual damages, and attorneys' fees and costs pursuant to 15 U.S.C. § 1692(k)(a).

### COUNT THREE
### VIOLATIONS OF THE CSPA, R.C. 1345.01, *et seq.* - BOTH DEFENDANTS
### KNOWING BREACH OF CONTRACT

68. Samhric alleges and incorporates herein every allegation set forth in the preceding paragraphs as though the same were fully rewritten herein.

69. Samhric is a consumer within the meaning of O.R.C. § 1345.01(D).

70. Each of the Defendants is a "supplier" as that term is defined by O.R.C. §

1345.01(C).

71. As demonstrated by the allegations above, the purported debt owed by Samhric to Pavey is a "consumer transaction" because the Lease was for personal, family or household use as defined by ORC § 1345.01(A).

72. As demonstrated by the allegations above Pavey engaged RRS on or about December 22, 2022 to collect an unpaid balance owed on the Lease which but Pavey's own admissions on June 2, 2022 and June 13, 2022 it knew or should have known Samhric did not owe as Samhric fulfilled his contractual obligations.

73. Pavey, through RRS, in RRS's actions described in Counts One and Two above committed unfair and deceptive acts by actively collecting on balances that Samhric did not owe.

74. Ohio Courts have determined that an intentional breach of contract constitutes an unfair and deceptive act in violation of the CSPA. *See Teeters Constr. v. Dort*, PIF No. 10002511 (December 20, 2006); *Brown v. Spears*, PIF No. 10000413 (May 1, 1981).

75. As a direct and proximate result of the actions of Defendants, which violate the CSPA, Samhric is entitled to actual damages in an amount to be determined at trial, non-economic damages of up to $5,000.00, treble damages, as well as an award of reasonable attorneys' fees.

**COUNT FOUR**
**VIOLATION OF THE CSPA, R.C. 1345.01, *et seq.* - BOTH DEFENDANTS**
**PATTERN OF INEFFICIENCY AND INCOMPETENCE**

76. Samhric realleges and incorporates herein every allegation set forth in the preceding paragraphs as though the same were fully rewritten herein.

77. Samhric is a consumer within the meaning of O.R.C. § 1345.01(D).

78. Each of the Defendants is a "supplier" as that term is defined by O.R.C. §

12

1345.01(C).

79. As demonstrated by the allegations above, the purported debt owed by Samhric to Pavey is a "consumer transaction" because the Lease was for personal, family or household use as defined by ORC § 1345.01(A).

80. Defendants' pattern of inefficiency and incompetence related to knowing breach of contract and failure to remedy the issues is a deceptive and unconscionable act or practice as defined by ORC § 1345.03(A).

81. Defendant's acts and practices were committed after such decisions were made available for public inspection under ORC § 1345.05(A)(3) and include, but are not limited to *Brown v. Lyons* 43 Ohio Misc. 14 (C.P., 1974); *Layne v. McGowen* 1995 WL316233 (Ohio Ct. App. 2nd Dist., Montgomery County, 1995); *Pearson v. Tom Harrigan Oldsmobile-Nissan, Inc*. 1991 WL214228 (Ohio Ct. App. 2nd Dist., Montgomery County, 1991); and *Brown v. Spears* 1979 WL52451 (Ohio Mun. Ct. 1979).

82. As a direct and proximate result of the actions of Defendants, which violate the CSPA, Samhric is entitled to actual damages in an amount to be determined at trial, non-economic damages of up to $5,000.00, treble damages, as well as an award of reasonable attorneys' fees.

## COUNT FIVE:
## BREACH OF CONTRACT - PAVEY

83. Samhric alleges and incorporates herein every allegation set forth in the preceding paragraphs as though the same were fully rewritten herein.

84. Based on the allegations above, Samhric and Pavey have a written lease agreement in which Samhric fulfilled all contractual terms.

85. As demonstrated by the allegations above Pavey knowingly breached the lease agreement by engaging RRS on or about December 22, 2022 to collect an unpaid balance owed on the Lease which but Pavey's own admissions on June 2, 2022 and June 13, 2022 it knew or should have known Samhric did not owe as Samhric fulfilled his contractual obligations.

86. Pavey's breach of the lease agreement proximately caused Samhric to suffer damages as outlined above, including but not limited to, the damages outlined in Paragraphs 45 through 47 above.

87. As a direct and proximate result of Pavey's breach of contract, Samhric is entitled to an award of actual damages in an amount to be determined at trial.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff Austin Samhric respectfully requests that this Court enter judgment an Order granting Judgment in her favor against Defendants Rent Recovery Solutions, LLC and JSDI Pavey Square, LLC as follows:

A. For an award of actual damages in a total amount to be determined at trial against Defendant RRS for the allegations contained in Count One and/or Count Two;

B. For an award of actual damages in a total amount to be determined at trial against the Defendants, jointly and severally as applicable, for the allegations contained in Count Three and/or Count Four;

C. For an award of actual damages, in an amount to be determined at trial against Defendant Pavey for the allegations contained in Count Five;

D. For an award of statutory damages against Defendant RRS as applicable, pursuant to 15 U.S.C. 1681n(a)(1) for the allegations contained in Count One;

14

E. For an award of statutory damages against Defendant RRS as applicable for the allegations contained in Count Two;

F. For an award of statutory damages, as applicable, against the Defendants, jointly and severally as applicable, for the allegations contained in Count Three and/or Count Four;

G. For an award of statutory non-economic damages, as applicable, against the Defendants, jointly and severally as applicable, for the allegations contained in Count Three and/or Count Four;

H. For an award of punitive damages as the Court may award against Defendant RRS pursuant to 15 U.S.C. 1681n(a)(2) for the allegations contained in Count One of the Complaint;

I. For an award of Samhric's reasonable attorneys fees and costs, as applicable, against Defendant RRS pursuant to 15 U.S.C. § 1681n(a)(3), and 15 U.S.C. § 1681(o)(a)(1) for each incident of negligent noncompliance of the FCRA alleged in Count One and/or pursuant to 15 U.S.C. § 1692(k)(a) for the violations of the FDCPA alleged in Count Two;

J. For an award of Samhric's reasonable attorneys fees and costs, as applicable, against the Defendants, jointly and severally as applicable, for the allegations contained in Count Three and/or Count Four; and

K. For such other relief which this Court may deem appropriate.

Respectfully submitted,

/s/Brian D. Flick
Marc E. Dann (0039425)
Brian D. Flick (0081605)

Marita I. Ramirez (0101882)
Dann Law
15000 Madison Ave.
Lakewood, OH 44107
Telephone: (216) 373-0539
Facsimile: (216) 373-0536
notices@dannlaw.com
*Counsel for Plaintiff Austin Samhric*

## JURY DEMAND

Plaintiff Austin Samhric hereby respectfully demands a trial by jury on all such claims that may be so tried.

/s/Brian D. Flick
Marc E. Dann (0039425)
Brian D. Flick (0081605)
Marita I. Ramirez (0101882)
Dann Law
*Counsel for Plaintiff Austin Samhric*